IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| ASHLEY R. MOWERY, | 1:22-CV-00180-RAL |
| Plaintiff | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| vs. | |
| WARDEN OVERMYER, et al., | OPINION ON DEFENDANTS' MOTION TO DISMISS |
| Defendants | ECF NO 20 |

I.      Introduction

Plaintiff Ashley R. Mowery, an inmate incarcerated at the State Correctional Institution at Cambridge Springs ("SCI-Cambridge Springs"), initiated this *pro se* civil rights action by filing a civil complaint and a motion for leave to proceed *in forma pauperis* (IFP). ECF Nos. 1, 1-1. Her complaint was docketed and submitted to the United States Marshal for service on July 21, 2022. ECF Nos. 6-7.

In her pleading, Mowery claims that employees at SCI-Cambridge Springs violated her constitutional rights as secured by the First, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments. ECF No. 6. As Defendants, Mowery has identified the Warden of SCI-Cambridge Springs, Michelle Overmyer, and corrections officers Ace, Dugan, and DeForce. *Id.* Mowery seeks monetary and injunctive relief pursuant to 42 U.S.C. § 1983. *Id.*

Presently pending before the Court is Defendants' motion to dismiss. *See* ECF No. 20. Despite obtaining an extension of time, Mower failed to file a response to Defendants' motion. *See* ECF Nos. 24-25. This matter is ripe for disposition.[1]

II.     Factual Background

The following allegations from Mowery's complaint and supporting documents are accepted as true for purposes of this motion. On December 30, 2021, officials at SCI-Cambridge Springs issued Misconduct Report D119523 charging Mowery with criminal conspiracy, criminal solicitation, possession of contraband (implements of escape), and unauthorized use of the mail. ECF No. 6-6. The version of events given by Defendant Ace in support of the misconduct stated that:

> On 12/22/21 the security office intercepted a letter written by [Mowery] addressed to Kamien Royal. In the letter, i/m Mowery conspired to have Kamien Royal introduce contraband into the facility. In the letter, i/m Mowery gives specific details of the layout of the facility and requested that a "burner phone" and charger [be] thrown over the perimeter fence into the yard area. I/m Mowery also provided specific days and times she would be in the yard, in the letter. During an investigation with i/m Mowery she admitted to this reporting officer that she authored the letter to Kamien Royal.

*Id.* Following a hearing, Mowery received a sanction of seven months in the Restricted Housing Unit ("RHU"). ECF No. 6 at 10. Mowery successfully appealed and, on remand, received a second disciplinary hearing at which sixty days was removed from her sanction. *Id.*

Most of Mowery's claims attack alleged defects in her disciplinary proceedings. She alleges that DeForce and several other corrections officers first approached her to discuss the incident on December 22, 2021. ECF No. 6 at p. 7. She was taken to the RHU and told that

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

2

"someone (security) will be down to see you." *Id*. Mowery denied any wrongdoing and requested an attorney but was ignored. *Id*.

On December 27, 2021, Ace and Dugan approached Mowery and asked if she knew a person named "Kamien Royal." *Id*. at 8. When Mowery denied any knowledge of that individual and asked to see the evidence against her, Ace began screaming at her. *Id*. According to Mowery, Ace told her that if she did not comply with the investigation, he would "make sure that [she would] rot down here in the RHU for the rest of [her] time and [would] not see the light of day or another day of [general] population' on campus." *Id*. Ace refused to let Mowery see any evidence relating to the investigation and claimed that police had arrived at the prison to force her to take a lie detector test. *Id*. He told her that, unless she admitted to the charges, she "would be receiving outside [criminal] charges." *Id*. Despite maintaining her innocence, Mowery allowed Ace and Dugan to guide her through a written admission of guilt because she believed she had no choice. *Id*. Mowery contends that this violated her constitutional right to due process.

On April 22, 2022, Mowery met with the prison's Program Review Committee (PRC) to review her RHU placement. *Id*. at 14. Despite her "good behavior," she "was berated by PRC saying that she's not taking responsibility or remorseful since she is still filing grievances upon the matter." *Id*. In conclusory fashion, she also suggests that she "consistently receives retaliation for submitting grievances about clandestine matters within [the] prison." *Id*. at 15.

Unrelated to her due process claim, Mowery also contends that the prison's medical sick call procedure violates the Fourteenth Amendment. *Id*. at 17. According to Mowery, when a sick call is submitted, "medical comes and speaks to you at your door where everyone in the

3

RHU can hear." *Id.* Mowery maintains that this amounts to an invasion of privacy and breach of medical confidentiality. *Id.*

Based on the foregoing, Mowery raises ten separate claims for relief. Counts One, Two, Three, Four, and Seven assert supervisory liability claims against Warden Overmyer based on her alleged failure to train, monitor, prevent, and remedy constitutional violations committed by other staff members at SCI-Cambridge Springs. Counts Five and Six present municipal liability claims (despite that no municipality has been named as a defendant) based on an alleged failure to train and the promulgation of an unconstitutional sick call policy. Count Eight raises a due process challenge to Mowery's disciplinary hearing and resulting sanction, while Count Nine alleges that prison officials extended Mowery's punishment in retaliation for past protected activity. Finally, Count Ten, in catch-all fashion, alleges that the aforementioned misconduct also violated the Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments to the United States Constitution.

III.   Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard

4

established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania,* 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV. Analysis

Mowery's pleading appears to raise claims based on supervisory liability, municipal liability, due process, retaliation, and various constitutional provisions. Each will be addressed in turn. To the extent that Defendants have not specifically addressed a claim in their motion to dismiss, the Court may *sua sponte* do so pursuant to 28 U.S.C. § 1915(e)(2).[2]

A. Municipal liability claims (Counts Five and Six)

At Counts Five and Six, Mowery purports to assert claims against an unidentified

---

[2] Having been granted leave to proceed in forma pauperis, *see* ECF No. 5, Mowery is subject to the screening provisions in 28 U.S.C. § 1915(e). Among other things, that statute requires the Court to dismiss any action in which the Court determines that the action is "frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *Muchler v. Greenwald*, 624 Fed. Appx. 794, 796-97 (3d Cir. 2015). A frivolous complaint is one which is either based upon an indisputably meritless legal theory (such as when a defendant enjoys immunity from suit) or based upon factual contentions which are clearly baseless (such as when the factual scenario described is fanciful or delusional). *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The determination as to whether a complaint fails to state a claim upon which relief may be granted is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *D'Agostino v. CECOM RDEC*, 436 Fed. Appx. 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

municipality[3] based on various prison policies. These claims are subject to dismissal based on the immunity afforded to states and state agencies by the Eleventh Amendment.

It is axiomatic that "the Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities." *See, e.g., O'Donnell v. Pennsylvania Dept. of Corrections*, 790 F.Supp.2d 289, 305 (M.D. Pa. 2011) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)). As a department of the Commonwealth of Pennsylvania, the DOC is immune from suit in federal court unless, *inter alia*, said immunity has been abrogated by Congress or waived by the state. *MCI Telecomm Corp. v. Bell-Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). *See also Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000) (noting that, as an agency of the Commonwealth of Pennsylvania, the DOC is entitled to assert the immunities afforded by the Eleventh Amendment).

"Pennsylvania has not waived its immunity from suit in federal court." *Toth v. California Univ. of Pennsylvania*, 844 F.Supp.2d 611, 648 (W.D. Pa. 2012) (citing 42 Pa.C.S.A. § 8521(b)). Nor did Congress intend by the general language of Section 1983 to override the traditional sovereign immunity afforded to the states. *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979); *see also Toth*, 844 F.Supp.2d at 648. Accordingly, Mowery's municipal liability claims must be dismissed.

B. Supervisory liability claims (Counts One through Four and Count Seven)

Throughout her pleading, Mowery accuses Overmyer of violating her constitutional rights by acting or failing to act in her supervisory position as the Warden of SCI-Cambridge

---

[3] Although not listed in the caption of Mowery's complaint, the City of Erie is identified in passing as a "municipal corporation of the State of Pennsylvania." ECF No. 6 at p. 3. No conduct is attributed to the City of Erie anywhere in the complaint, and the Court cannot infer any connection between the City of Erie and SCI-Cambridge Springs.

Springs.  These accusations include the following:

- Overmyer disregarded the "accurate and factual merit" of Mowery's arguments while denying her misconduct appeal (Count One)

- Overmyer allowed Mowery to be housed in the RHU despite that the RHU has only ten rooms, allegedly in violation of a DOC policy requiring "all state RHU's [to] be able to hold 10% of the population by law" (Count One)

- Overmyer was "aware of" the fact that sick call visits in the RHU take place at the inmate's cell door, allowing RHU residents to overhear other inmate's private medical information (Count One)

- Overmyer "knew of subordinates (Lt. DeForce, Cpt. Ace, Lt. Dugan's) conduct" but "failed to take action to fix it" (Count Two)

- Overmyer "failed to set up policies that help guide subordinates conduct to prevent violations of constitutional rights" and "failed to inform and train staff . . . to make sure that they followed policies" (Count Two)

- Overmyer "failed to properly supervise staff to make sure that they followed policies" (Count Two)

- Overmyer was probably "made . . . aware" that the prison's phone system was not working for several days in April and May of 2022, depriving inmates of access to the abuse hotline (Count Two)

- Overmyer "participated directly in the alleged constitutional violation indicating Plaintiff didn't have any rights in Plaintiff's appeal to her" (Count Three)

- Overmyer "failed to remedy the violation" after being informed through Mowery's appeal that Lt. DeForce "failed to provide counsel or inform or document Plaintiff stating she wanted counsel and was indigent" (Count Three)

- Overmyer "acted with gross negligence in supervising subordinates who committed the wrongful acts" and "exhibited deliberate indifference to the rights of Plaintiff (prisoner) by failing to act on information indicating that unconstitutional acts were occurring (Count Three)

- Overmyer "affirmed Plaintiff's disciplinary conviction," "stated that Plaintiff couldn't exercise her rights," and "ignored Plaintiff's complaints" (Count Four)

- Overmyer "failed to remedy the wrong" after "learning of a violation of Plaintiff's rights" (Count Four)

- Overmyer "substantiat[ed] a pattern of repeated unconstitutional behavior" despite

that "more or better training, supervision or discipline is needed" (Count Seven) ECF No. 6 at pp. 16-22, 26.[4]

As Defendants emphasize in their motion to dismiss, a § 1983 plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendant is a supervising prison official. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[L]iability cannot be predicated solely on the operation of *respondeat superior*."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to

---

[4] Mowery also alleges that prison policy required her to be "reviewed by her unit management team once every 30 days," but that she "was never reviewed" and "never received any documentation concluding in reviewal." ECF No. 6 at pp. 6-7. Although she includes this claim in Count Two, it does not appear to be directed at any particular Defendant.

supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Moreover, it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013). *See also Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Most of Mowery's claims in the instant case focus on Overmyer's failure to uphold her misconduct appeal and alleged failure to monitor, supervise, and discipline her subordinates. From a review of the factual averments offered in support of those claims, it is apparent that Mowery is attempting to hold Overmyer responsible for the unconstitutional actions of other individuals based entirely upon her supervisory role in the prison system and her response to Mowery's appeal. As described above, this type of averment is insufficient to establish personal involvement in the deprivation of a constitutional right. *See, e.g., Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Kloss v.*

*SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant was "made aware of several issues of the plaintiff's and . . . failed to help him" is insufficient to state a claim for reliefs) participation in an administrative appeal process).

Mowery's claim that Overmyer failed to properly train her subordinates fares no better. Such claims raise "difficult problems of proof," *Board of County Com'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 406 (1997), because they are "a step removed from the constitutional violation resulting from that failure." *Douglas v. Brookville Area Sch. Dist.*, 836 F.Supp.2d 329, 364 (W.D. Pa. 2011). *See also Okla. City v. Tuttle*, 471 U.S. 808, 822 (1985) (describing "a 'policy' of 'inadequate training'" as "far more nebulous, and a good deal further removed from the constitutional violation," than other policies). Thus, an official's "culpability for a deprivation of [constitutional] rights is . . . at its most tenuous" where a § 1983 claim turns on a failure to train or failure to act. *Connick*, 563 U.S. at 60-61. Moreover, to demonstrate deliberate indifference based on a failure to train, the plaintiff must ordinarily show a "pattern of similar constitutional violations by untrained employees." *Thomas v. Cumberland Cnty*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51 (2011)). Mowery has made no attempt to satisfy this burden. As such, her failure to train claims must also be dismissed.

C. Medical privacy claim (Counts One and Seven)

In addition to her supervisory liability claims, Mowery alleges that Overmyer violated her Fourteenth Amendment right to privacy and medical confidentiality by requiring medical personnel conducting sick call visits to examine RHU patients "at [the cell] door where everyone in the RHU can hear." ECF No. 6 at p. 17. Mowery maintains that "privacy is always disregarded" and "there is not even an attempt for discretion" in such circumstances. *Id*. By

11

way of example, she mentions that a "C.O. stood next to the medical practitioner the entire time Plaintiff was speaking of breast cancer" on an unidentified occasion. *Id.* No other supporting facts are alleged.

In *Doe v. Delie*, 257 F.3d 309, 315-18 (3d Cir. 2001), the Court of Appeals for the Third Circuit recognized that the Fourteenth Amendment affords a prisoner the right to privacy in his or her medical information. However, because "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen," her "constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Id.* at 317. Thus, a prisoner's right to privacy in her medical information "may be curtailed by" a policy that is "reasonably related to a legitimate penological interest." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Although Defendants do not address this issue, the Court finds that Mowery has failed to state a cognizable claim. Most critically, Mowery has failed to explain how she has been personally injured by the offending policy. Her limited factual averments consist of vague and conclusory accusations that her own rights and those of "every prisoner residing in the RHU" have been repeatedly violated. However, an inmate lacks standing to assert complaints on behalf of other inmates, *Karolski v. Beaver County*, 2016 WL 6647914, at *2 (W.D. Pa. Nov. 10, 2016), and her lone personal averment – that she once had to "speak of breast cancer" in the presence of a corrections officer – lacks the factual specificity necessary to state a plausible claim for relief. ECF No. 6 at p. 17. Because the facts alleged do not support that Mowery, individually, has sustained a cognizable injury as a result of the alleged policy of conducting medical visits at her cell door, dismissal is appropriate. *See Sides v. Wetzel*, 2021 WL 8017811, at *12-13 (W.D. Pa. Nov. 2, 2021); *Preziosi v. Nicholson*, 2021 WL 4442840 (W.D. Pa. Sept. 28, 2021).

D. Due process claim (Count Eight)

In Count Eight of her complaint, Mowery arrives at the heart of her allegations: that Ace, Dugan, and DeForce violated her constitutional right to due process during a misconduct investigation that resulted in a disciplinary sanction of seven months in the RHU. According to Mowery, Defendants refused to let her see any evidence relating to the investigation, threatened her with criminal charges if she refused to confess, and forced her to sign a written admission of guilt. Mowery maintains that this violated her procedural due process rights to examine the evidence against her and defend against the associated charges.

The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The United States Supreme Court has mandated a two-part analysis of Fourteenth Amendment procedural due process claims. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). First, the reviewing court must determine "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property.'" *Id*. If a protected interest is implicated, the court must "decide what procedures constitute 'due process of law.'" *Id*. If no protected interest is implicated, however, then "it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred." *Harris v. Hines*, 2017 WL 4119743, at *5 (M.D. Pa. Sept. 18, 2017).

Mowery focuses heavily on the second part of this analysis, emphasizing the alleged defects in the procedures that were utilized throughout her investigation and disciplinary hearing. However, as noted above, those procedural defects can only support a due process claim if the hearing also resulted in the deprivation of a legally cognizable liberty interest. *Huertas v. Secretary Penna. Dep't of Corr.*, 533 Fed. Appx. 64, 66 (3d Cir. 2013). A legally cognizable

13

liberty interest exists only where some punishment or condition to which the prisoner is subjected "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). Thus, courts have routinely held that sanctions such as Mowery alleges in this case – seven months in the RHU – fall short of this standard. *See, e.g.*, *Smith*, 293 F.3d at 653 (disciplinary sanction of seven months in administrative confinement "implicates no constitutional right and therefore cannot overcome the hurdle erected by the holding in *Sandlin*"); *Nifas v. Beard*, 374 Fed. Appx. 241, 244 (3d Cir. 2010) ("[C]onfinement in AC for 178 days and a 90-day placement on the RRL does not amount to an 'atypical and significant hardship' when compared to the ordinary incidents of prison life, and thus, Nifas has no protected liberty interest."); *Sanchez v. Walton*, 2019 WL 249537, at *2-3 (E.D. Pa. Jan. 16, 2019) (confinement in segregation "is insufficient to establish that [plaintiff] was deprived of a liberty interest"). In the absence of a protected liberty interest, any defects in the investigation and hearing relating to misconduct charge against Mowery do not, as a matter of law, support an actionable Fourteenth Amendment due process claim.

E. Retaliation claim (Count Nine)

Mowery next alleges that Overmyer and two non-Defendants engaged in unlawful retaliation by refusing to shorten the length of her disciplinary sanction because of her past protected activity. ECF No. 6 at p. 30. Mowery alleges that, while conducting a 90-day review of her RHU placement, Overmyer and other individuals on the PRC ignored her "pristine track record and good behavior" and instead focused on her use of the grievance system. *Id.* She

claims that Overmyer started the review by asking Mowery, "Do you know what the grievance system is for?" *Id*. Another individual then informed Mowery that "she does not have her vote because she does not believe Plaintiff is remorseful [or] she would not be submitting so many grievances contending the matter." *Id*. at 31. On another occasion, Overmyer responded to Mowery's plea to reduce her disciplinary sanction by asking her if she had complained to the DOC Central Office about RHU conditions and policies. *Id*.

To establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) her conduct was constitutionally protected; (2) she suffered an adverse action at the hands of prison officials; and (3) her constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). To be actionable, the adverse action "need not be great" but "must be more than de minimis." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). This is an objective inquiry. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).

While Mowery's allegations loosely track the outline of a potential retaliation claim, they fall short of the factual specificity required to elevate that claim to the realm of plausibility. As an initial matter, while Mowery generally avers that she engaged in protected activity by filing grievances prior to her PRC review, she has failed to identify the specific grievances at issue, state their date relative to any alleged retaliatory action, or describe their subject matter and against who they were filed. Absent such details, her pleading fails to support a plausible inference that a causal connection exists between her protected activity and the PRC's denial of

15

her request for a reduced sentence. Nor can the Court determine, under the facts alleged, whether the PRC committee's decision amounted to an adverse action and to what extent that decision can be attributed to Overmyer, the lone Defendant on that committee. Although Mowery may be able to close these gaps by way of amendment, her complaint, as currently pleaded, fails to state a claim.

F. Assorted constitutional violations (Count Ten)

Mowery rounds out her complaint by invoking several additional constitutional amendments, none of which support a cognizable claim. She first suggests that Defendants violated the Fifth Amendment by forcing her to sign a coerced admission and subjecting her to a second disciplinary hearing based on the same incident. However, it is axiomatic that "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action . . ." *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983). There is nothing to suggest that any of the Defendants are federal actors. Consequently, Plaintiff's Fifth Amendment claim must be dismissed. *See, e.g., Leventry v. Watts*, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors."); *Kopchinski v. Green*, 2006 WL 2228864, at *1 (E.D. Pa. Aug. 2, 2006) (dismissing plaintiff's Fifth Amendment claims because the defendants were state actors).

Mowery also alleges that Defendants violated the Sixth Amendment by failing to provide her with an attorney for her disciplinary hearing. However, "the rights due under the Sixth Amendment apply only in criminal prosecutions, not in prison disciplinary proceedings." *Stevens v. Gatto*, 2021 WL 5802492, at *3 (W.D. Pa. Dec. 7, 2021) (citing sources omitted). Similarly, her attempt to forge a Seventh Amendment claim from a perceived "right to privacy and confidentiality during/relating to medical matters" is patently frivolous. *See* U.S. Const. am.

16

VII (providing, in full, that: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.").

Finally, Mowery maintains that her stay in the RHU violated the Eighth Amendment's prohibition against cruel and unusual punishment because it was "excessively long" and stemmed from an "unfair, mistreated investigation." ECF No. 6 at p. 35. "For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must result in the denial of the minimal civilized measure of life's necessities." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir.2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Courts have widely held that conditions in the RHU do not satisfy this standard. *See, e.g.*, *Williams v. Armstrong*, 566 Fed. Appx. 106, 109 (3d Cir. 2014) (inmate's 112 day stay in the RHU where he was not denied any of life's necessities did not violate the Eighth Amendment); *Gibson v. Lynch*, 652 F.2d 348 (3d Cir. 1981) (incarceration in solitary confinement for 90 days did not violate the Eighth Amendment); *Griffin v. Vaughn*, 112 F.3d 703, 709 (placement in administrative custody for 15 months did not violate the Eighth Amendment).

In short, Mowery has failed to plead a viable claim based on alleged violations of the Fifth, Sixth, Seventh, or Eighth Amendments. Count Ten of her complaint must be dismissed.

V.   Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel.

*Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, because Mowery has not yet had the opportunity to amend her claims, the Court will permit her to file a curative amendment, if so desired, within thirty days of the filing of this Memorandum Opinion. Failure to do so will result in a final order dismissing this case, with prejudice, for the reasons set forth herein.

VI.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss [ECF No. 20] is granted. Mowery's complaint is dismissed, without prejudice. If Mowery wishes to file an amended complaint, she may do so on or before July 5, 2023. Failure to file an amended complaint on or before that date will result in a final order dismissing this action, with prejudice.

                                                                                               RICHARD A. LANZILLO
                                                                                               Chief United States Magistrate Judge

Dated:  June 2, 2023